UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

BRAULIO MENDEZ,

    Plaintiff,                            Civil No. 11-1926 (JAF)

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER

Claimant petitions this court under 42 U.S.C. § 405(g) to review the decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying Claimant's application for disability benefits. (Docket No. 1.) Claimant files a memorandum challenging the denial (Docket No. 10), and Commissioner files a memorandum defending it (Docket No. 11).

## I.

## Background

We derive the following facts from the parties' filings and the transcript of the record in this case ("R."). Claimant was born on June 16, 1968. (R. at 83.) Claimant has worked as an electronic assembler, a warehouse worker, and a department store stock clerk. (R. at 435-36.)

Civil No. 11-1926 (JAF)                                                                -2-

1    Claimant alleges that he has suffered from back pain and depression, beginning on

2    October 8, 2004.  (R. at 22.)  Claimant has not engaged in substantial gainful activity since

3    his alleged onset date in October 2004.  (R. at 24.)

4    On April 10, 2006, Claimant applied for Social Security disability benefits.  (Docket

5    No. 10 at 1; R. at 83.)  He claimed that he was disabled under the Social Security Act, 42

6    U.S.C. §§ 416 and 423 (the "Act") on account of back pain and depression.  (R. at 23.)

7    Commissioner denied his claim first on September 25, 2006, and again on reconsideration

8    on July 2, 2007.  (Docket No. 10 at 1.)  Claimant requested a hearing before an

9    administrative law judge ("ALJ"), which took place before ALJ Glenn Meyer, on May 7,

10   2009.  (Id.)  On June 9, 2009, the ALJ issued a partially favorable decision.  (Id.)

11   In his decision, the ALJ found that Claimant was disabled beginning on April 28,

12   2009, but was not disabled before that date.  The ALJ also found that there were jobs in the

13   national economy that Claimant could have performed before April 2009.  April 28, 2009

14   was the first point at which Claimant's alleged disability became adequately supported by

15   medical evidence in the eyes of the ALJ.  (R. at 26.)  April 21, 2009 was the first time that

16   Claimant's treating physician, Dr. Rodríguez Robles ("Dr. Robles"), expanded on the

17   limitations caused by Claimant's depression.  (R. at 26.)  These expanded findings were

18   then corroborated by a report dated April 28, 2009, signed by Dr. Malavé of the Clínica para

19   el Cuidado y Tratamiento de la Conducta.  (Id.)

20   Claimant requested review of the ALJ decision from the Appeals Council and, on

21   July 19, 2011, the Appeals Council denied the request. (Id.)  On September 20, 2011,

22   Claimant filed the instant case for judicial review of Commissioner's decision.  (Docket

23   No. 1.)

Civil No. 11-1926 (JAF)                                                                    -3-

1                                                    **II.**

2                                         **Standard for Review**

3          An individual is disabled under the Act if he is unable to do his prior work or,

4    "considering [his] age, education, and work experience, engage in any other kind of

5    substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d).  The

6    Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by

7    substantial evidence, shall be conclusive."  § 405(g).  Substantial evidence exists "if a

8    reasonable mind, reviewing the evidence in the record as a whole, could accept it as

9    adequate to support [the] conclusion."  Irlanda Ortiz v. Sec'y of Health & Human Servs.,

10   955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs.,

11   647 F.2d 218, 222 (1st Cir. 1981)).  We must uphold Commissioner's decision if we

12   determine that substantial evidence supports the ALJ's findings, even if we would have

13   reached a different conclusion had we reviewed the evidence de novo.  Lizotte v. Sec'y of

14   Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

15         Our review is limited to determining whether the ALJ employed the proper legal

16   standards and focused facts upon the proper quantum of evidence.  Manso-Pizarro v. Sec'y

17   of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1981).  We reverse the ALJ if we find

18   that he derived his decision "by ignoring evidence, misapplying the law, or judging matters

19   entrusted to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  In reviewing a

20   denial of benefits, the ALJ must have considered all evidence in the record.  20 C.F.R.

21   § 404.1520(a)(3).

Civil No. 11-1926 (JAF)                                                                -4-

1        The Act outlines a five-step inquiry to determine whether a claimant is disabled.

2    Step one focuses on the claimant's work activity; if claimant is "doing substantial gainful

3    activity," he will be found "not disabled."  § 404.1520(a)(4).  Step two determines whether a

4    claimant's impairment(s) meet(s) the Act's severity and duration requirements.  <u>Id.</u>  A

5    claimant bears the burden of proof "at step one of showing that he is not working, [and] at

6    step two that he has a medically severe impairment or combination of impairments . . . ."

7    <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

8        Step three asks whether the claimant has an impairment or combination of

9    impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part

10   404, subpart P. § 404.1520(d).  If the claimant does not have an impairment equaling one of

11   those listed impairments, <u>see</u> <u>id.</u>, the inquiry proceeds to step four.  At step four, the ALJ

12   first must determine the claimant's residual functional capacity ("RFC").  § 404.1520(e).

13   Next, the ALJ asks whether the claimant has the RFC to perform the requirements of his

14   past relevant work. § 404.1520(f).  If the claimant is able to perform his past work, he is not

15   considered disabled.  <u>Id.</u>

16       In this case, the ALJ found at step one that Claimant had not been engaged in

17   substantial gainful activity since Claimant's alleged disability onset date of October 8, 2004.

18   At step two, the ALJ found that Claimant had two severe impairments: a mental condition

19   and back problems.  (R. at 24.)  At step three, the ALJ found that Claimant did not have an

20   impairment equaling one of the impairments listed in 20 C.F.R. Part 404, subpart P.  (R. at

21   24.)  Proceeding to step four, the ALJ then found that before April 28, 2009, Claimant had

Civil No. 11-1926 (JAF)                                                                  -5-

1   an RFC that permitted him to perform light work as defined in 20 C.F.R. § 404.1567(b).  (R.

2   at 25.)  The ALJ consulted the testimony of a vocational expert, Dr. Cintrón Antonmarchi,

3   who testified that during this time, Claimant could have worked as a wire worker.  (R. at 27-

4   28.)  The vocational expert also testified that Claimant could not have returned to his past

5   relevant work. (R. at 437.)  Finding that there were other jobs in the national economy that

6   Claimant could have performed until April 28, 2009, the ALJ found Claimant not disabled

7   before that date.  (R. at 28.)

8                                               **III.**

9                                           **<u>Analysis</u>**

10       Claimant challenges the ALJ's determination that he was not disabled until April 28,

11  2009.  Claimant makes two main arguments.   (Docket No. 10.)  First, Claimant argues that

12  the ALJ improperly disregarded the opinion of his treating physician, Dr. Rodríguez-Robles

13  ("Dr. Rodríguez"), and failed to provide "good reasons" for disregarding it.   Second,

14  Claimant argues that the questions posed to the vocational expert were not based on an

15  accurate description of Claimant's limitations.  We disagree, find that the ALJ's decision

16  rests on "substantial evidence," and affirm.

17       First, Claimant argues that the ALJ did not give proper weight to the opinion of his

18  treating psychiatrist, Dr. Rodríguez.  (Docket No. 10 at 21-28.)  Claimant also argues that

19  the ALJ did not give sufficient reasons for not crediting Dr. Rodríguez' report.  (<u>Id.</u>) Social

20  Security regulations provide that a treating source's opinion will be given controlling weight

21  if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques

22  and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R.

Civil No. 11-1926 (JAF)                                                                 -6-

1   § 404.1527(d)(2).  Section 404.1527(d)(2) requires an ALJ to give "good reasons" for the

2   weight accorded to a treating source's opinion.

3        In this case, we think that the ALJ gave "good reasons" for disregarding the opinion

4   of the treating physician.  In his report, he wrote that Dr. Rodríguez' position was vague and

5   lacked details.  (R. at 26.)  The ALJ also wrote that although Dr. Rodríguez had treated

6   Claimant for a long period of time--since Claimant first began receiving treatment from the

7   State Insurance Fund--none of Dr. Rodríguez' SIF reports provided any details, except that

8   Claimant needed more treatment.  (Id.)  Moreover, the ALJ also cited two reasons for

9   doubting the severity of Claimant's ailments.  (R. at 25.)  First, medical examinations of

10  Claimant's back consistently showed only "modest findings."  (R. at 25.)  These

11  examinations included an x-ray, nerve conduction velocity studies, and an MRI.  (Id.)

12  Second, the ALJ also weighed Claimant's comments to a SIF official that he did not want to

13  go back to work for fear of reinjuring himself.  (R. at 26.)

14       Based on these considerations, the ALJ found that Claimant's statements "concerning

15  the intensity, persistence and limiting effects of these symptoms are not credible prior to

16  April 28, 2009."  (R. at 25.)  This determination undercuts Dr. Rodríguez' diagnosis of

17  severe major depression.   The only treatment notes available suggest that Claimant

18  developed his depression following his back injury in 2004.  Under "Clinical Profile,"

19  Dr. Rodríguez notes that: "The patient injured his back in 2004.  He developed Severe

20  Major Depression.  The patient presents a chronic pain condition." (R. at 332.) The "Course

21  of the Illness" section states virtually the exact same barebones account of Claimant's

22  condition.  (Id.)  The ALJ properly noted that Dr. Rodríguez' treatment notes are lacking in

23  detail: The rest of the report consists only of form sheets marked by a series of checked

1   boxes of symptoms.  (R. at 330-337.)  The ALJ permissibly found that this was a weak

2   foundation to sustain a diagnosis of severe depression.

3        These reasons given by the ALJ distinguish this case from <u>Polanco-Quinones v.</u>

4   <u>Astrue</u>, 477 Fed. Appx. 745, 2012 WL 1502725 (1st Cir. May 1, 2012). In <u>Polanco</u>, the ALJ

5   provided "absolutely no reasons for his conclusion that [the treating physician's] opinions

6   were not well-supported."  <u>Id.</u> at *2.  Here, the ALJ explained why he did not find

7   Dr. Rodríguez' opinion substantiated, and why he did not credit the Claimant's description

8   of his symptoms.

9        There was also plenty of evidence to conclude that Dr. Rodríguez' opinion was

10  "inconsistent with the other substantial evidence in [the] record." 20 C.F.R.

11  § 404.1527(d)(2).  As the government notes in its brief, Claimant also showed many signs of

12  leading an otherwise healthy and well-adjusted life.  (Docket No. 11 at 8).  He lived in a

13  home with his wife and children, whom he took care of and picked up from school.  He did

14  chores around the house, drove a car, went outside, went grocery shopping, talked with

15  friends, and went to church.  (R. at 91-97.) Claimant also got along well with authority

16  figures and had never been laid off because of problems getting along with others.  (R. at

17  103.)

18       As the government points out, Dr. Rodríguez' account was also contradicted by

19  medical records showing that Claimant's depression improved with treatment.  (Docket

20  No. 11 at 4-5.)   Following his hospitalization in 2005, the medical report noted that

21  Claimant had achieved "remission of symptoms." (R. at 182.)  Reports from February and

22  March 2005 also indicated that working was one of Claimant's "strengths."  (R. at 186,

23  202.)  In February 2005, the report noted that Claimant worked forty hours per week. (R. at

Civil No. 11-1926 (JAF)                                                                              -8-

1   186.)  The last available medical records from 2005 indicate that Claimant continued to

2   improve with treatment.  (R. at 216.)  He was not seen again, according to these records,

3   until June 2008.  (R. at 218.)

4        Dr. Rodríguez' opinion is also inconsistent with the reports of Dr. Vázquez and

5   Dr. Sánchez.  Dr. Vázquez, after reviewing Claimant's medical records and daily activities,

6   concluded that Claimant had only mild to moderate restrictions in daily living, social

7   functioning, and concentration, persistence or pace.  (R. at 302-312.)  Later, Dr. Vázquez

8   confirmed this opinion.  (R. at 327.)  Dr. Sánchez also reviewed the medical evidence on

9   record and found that Claimant had only moderate restrictions in these areas.  (R. at 370-

10  385.)  These reports by non-examining physicians can constitute "substantial evidence"

11  where, as here, they are consistent with the record and contain more than just "brief

12  conclusory statements or the mere checking of boxes."   Berrios-Lopez v. Sec'y of Health

13  and Human Servs., 951 F.2d 427, 431 (1st Cir. 1991).   In their concluding sections,

14  Drs. Vázquez and Sánchez both summarized Claimant's history and provided reasons for

15  finding him not disabled.  (R. at 327, 387.)  These reports contained as much, if not more

16  analysis of Claimant's condition, than did the reports of Dr. Rodríguez. Together with the

17  other evidence in the case, we find these opinions were sufficient to outweigh the opinion of

18  Dr. Rodríguez. Berrios-Lopez, 951 F.2d at 431.

19       Next, Claimant argues that the questions posed to the vocational expert did not

20  accurately reflect his limitations.  In particular, Claimant objects that the ALJ's questions

21  did not refer to the specific limitations found by Claimant's treating psychiatrist,

22  Dr. Rodríguez. (Docket No. 10 at 16.)  Dr. Rodríguez found that Claimant had certain non-

23  exertional limitations that the ALJ did not describe in his questions to the vocational expert.

Civil No. 11-1926 (JAF)                                                              -9-

1    In particular, Dr. Rodríguez found that Claimant was unable to pay attention and

2    concentrate; unable to complete a normal work day or work week; unable to perform at a

3    consistent pace and accept criticism from supervisors; and had psychomotor retardation.

4    (Docket No. 10 at 17; R. at 335, 337.)

5            In Arocho v. Sec'y of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1981),

6    the First Circuit clarified the relevant standards that apply when an ALJ poses questions to a

7    vocational expert.  In Arocho, the First Circuit held:

8            [I]n order for a vocational expert's answer to a hypothetical question to be
9            relevant, the inputs into that hypothetical must correspond to conclusions that
10           are supported by the outputs from the medical authorities. To ensure proper
11           correspondence, the [ALJ] must both clarify the outputs (deciding what
12           testimony will be credited and resolving ambiguities), and accurately transmit
13           the clarified output to the expert in the form of assumptions.
14
15   Id. at 375.  In this case, we think that the ALJ met his burden.  As we explained above, the

16   ALJ had sufficient reasons, which he expressed in his report, for discounting the opinion of

17   Dr. Rodríguez.    In particular, the ALJ noted the lack of specifics and vagueness

18   accompanying Dr. Rodríguez' reports. (R. at 26.)  He also found that Claimant's description

19   of the intensity, persistence, and limiting effects of his medical condition were not credible.

20   (R. at 25.) These were permissive determinations for the ALJ to make, especially in light of

21   the other evidence in support of his determination.   20 C.F.R. § 404.1527 (noting that a

22   treating physician's opinion need not be given controlling weight if it is not well-supported

23   or if it is inconsistent with substantial evidence).  Dr. Vázquez and Dr. Sánchez provided

24   assessments that were consistent with the ALJ's view of Claimant's RFC and limitations.

25           Moreover, we think that the hypothetical question posed by the ALJ to the vocational

26   expert was a fair reading of Claimant's limitations.  The ALJ asked the vocational expert to

Civil No. 11-1926 (JAF)                                                              -10-

1    assume a person of Claimant's work experience, age, and academic vocational profile

2    "whose maximum physical exertion is light, whose maximum mental capacity is carrying

3    out simple and repetitive tasks, who is not able to have any contact with the public and who

4    may have an occasional contact with workers and supervisors." (R. at 436.) This was

5    consistent with the record evidence, including medical records and daily activity reports.

6    Claimant's counsel then asked the vocational expert to assume greater limitations. (R. at

7    439.)  Based on our reading of the record, it seems clear that the ALJ did not share

8    Claimant's view of those limitations, and posed appropriate questions to the vocational

9    expert based on his own independent view.

10           Moreover, the ALJ's view of Claimant's limitations was consistent with the opinions

11   of Drs. Vázquez and Sánchez. (R. at 387.)  Claimant is correct that the ALJ did not

12   specifically mention the reports by Drs. Vázquez and Sánchez. (See Docket No 10 at 28.)

13   The relevant rule cited by Claimant provides that "[u]nless a treating source's opinion is

14   given controlling weight, the [ALJ] must explain in the decision the weight given to the

15   opinions of a State agency medical or psychological consultant."  20 C.F.R.

16   § 404.1527(f)(2)(ii).

17           Courts normally cannot affirm an agency on grounds other than those advanced by

18   the agency.  Maine General Medical Center v. Shalala, 205 F.3d 493, 500 (1st Cir. 2000)

19   (citing SEC v. Chenery Corp., 318 U.S. 80, 88 (1943)).  There is an exception to that rule,

20   however, if it is clear what an agency's decision must be.  See id. (citing Thornburgh v.

21   American College of Obstetricians & Gynecologists, 476 U.S. 747, 756 n.7 (1986)).  We

22   think it clear that here, the ALJ was at least implicitly relying on the medical opinions of

23   Drs. Vázquez and Sánchez.  The limitations that the ALJ used in his hypothetical conformed

Civil No. 11-1926 (JAF)                                                                     -11-

1  to the findings by Drs. Vázquez and Sánchez.  (R. at 387.)  Dr. Sánchez' report specifically

2  states that Claimant is able to concentrate for two-hour periods and complete a normal

3  workday/workweek without interruption.  (R. at 387.)   That finding refutes Claimant's

4  theory that he was unable to concentrate for twenty-minute periods.  (R. at 439.)  Claimant's

5  daily activities and remission of symptoms, both cited in the state agency medical reports,

6  (R. at 327, 387), provide further grounds for concluding that Claimant's condition was not

7  as severe as Dr. Rodríguez suggested.  In light of this clear evidence supporting the ALJ's

8  decision, we decline to reverse for the ALJ's failure to address explicitly the state agency

9  medical reports. Maine General Medical Center, 205 F.3d at 501 (providing exception to the

10 Chenery rule when it is clear what the agency's decision must be).  In sum, we find that the

11 ALJ did an adequate job of "clarify[ing] the outputs . . . and accurately transmit[ting] the

12 clarified outputs to the experts in terms of assumptions.  Arocho, 670 F.2d at 375.

13                                                **IV.**

14                                          **Conclusion**

15        For the foregoing reasons, the decision of the ALJ is **AFFIRMED**.   Claimant's

16 complaint will be **DISMISSED WITH PREJUDICE.**  (Docket No. 1.)

17        **IT IS SO ORDERED.**

18        San Juan, Puerto Rico, this 22nd day of January, 2013.

19                                          s/José Antonio Fusté
20                                          JOSE ANTONIO FUSTE
21                                          United States District Judge